All right, our fourth case for today, still the morning, is Avila de la Rosa against Attorney General Barr, and we will hear first from Ms. Schnoor. Good morning, Your Honors, and may it please the Court. The statute governing the initiation of removal proceedings requires that a non-citizen be served a notice to appear specifying the time and place of his first removal hearing. Here, Mr. Avila received a notice to appear that failed to specify the time of his hearing. This Court has already held in Ortiz-Santiago that a notice to appear that omits the time of the hearing fails to comply with the statute and is procedurally defective, even if the government subsequently informs the non-citizen of the time of his hearing through a follow-up document. The Court in Ortiz-Santiago also explained what should happen when a non-compliant notice to appear has been issued. If the non-citizen timely objects, the immigration judge should quash the notice to appear for failing to comply with the statute and not allow the removal proceedings to go forward until a new compliant notice to appear has been issued. And there's no procedural barrier that the government faces to issue such a new compliant notice to appear, is there? No, the government has not argued that. And so here, Mr. Avila timely objected, and the BIA agreed that he had timely objected. And the BIA also acknowledged this Court's holding in Ortiz-Santiago that the statutory time and place requirement here is a claim processing rule. But the BIA refused to enforce the rule on the ground that Mr. Avila had not shown that he was harmed by the government's failure to follow the rule. That decision cannot stand. When a claim processing rule is timely raised, the absence of harm by itself is not a valid basis for refusing to follow the rule. Isn't the harm element or the prejudice element just relevant to the forfeiture analysis? That's correct, Your Honor. That's what the Court said in Ortiz-Santiago, and that's what subsequent decisions have said, that if the non-citizen doesn't make a timely objection, then he must show that he should be excused his forfeiture. And part of that is showing prejudice. Isn't that the situation, for example, in Alvarez-Espino? That's correct, Your Honor. It's a rather late invocation, like second time around appeals or something. That's correct. That's clear from the facts of Alvarez-Espino, and also the court in Alvarez-Espino looked to another decision to be Aloha, which had the same sort of facts and said that the objection was untimely. Ms. Schnoor, does the Nis-Chavez case, which was argued earlier in November, does that have a possibility of impacting our decision here, and if so, what are the consequences? It has a possibility, Your Honor. So the question in Nis-Chavez is, it sort of, the answer follows, is a very straightforward application of the court's holding in Pereira, that the time and place of the removal hearing is an integral part of a notice to appear. And the question in Nis-Chavez is, does the notice to appear, does it have to be a single document, or does the statute allow it to be multiple documents? And so here, as the court already recognized in Ortiz-Santiago, after Pereira, it's clear that the notice to appear requires the time and place to be included, along with the rest of the information in the notice to appear. So we would say that there is no reason necessarily to await the outcome in Nis-Chavez here, because the law is quite clear, and moreover, the court might not publish its decision in Nis-Chavez for several more months. Did the government even make that argument here, that before the board, that the defect in the notice to appear was cured by the notice of the hearing? No, no, Your Honor. The board did not articulate that sort of argument, and so also Chenery would prevent the court from affirming on that ground. That's correct. So just to pick up on the rest of Judge Brennan's question, if Nis-Chavez comes out and says that, well, two documents could cure it, would that even matter to our analysis under Chenery, given that it wasn't raised? It would not matter, Your Honor. The court would still be required to remand, and then there would be some question about what would happen on remand. So the purpose of claim processing rules, like the one at issue here, is to assure the orderly progress of litigation by requiring the parties to take certain procedural steps at certain times. The quintessential example is a filing deadline, but there are many other examples of similar sorts of procedural prerequisites to suit, just like the one at issue here. For example, just last year in Fort Bend County, the Supreme Court considered the statutory requirement that a charge of discrimination be filed with the EEOC prior to a litigant commencing a Title VII employment discrimination suit. And the court said this sort of procedural requirement, the rule is mandatory, it must be followed if it's timely raised, but it is subject to forfeiture if the litigant fails to raise the rule in a timely manner. And the court in Fort Bend didn't indicate at all that there was a prejudice inquiry on top of that. No, it did not, Your Honor, and Respondent has not come up with any case of a claim processing rule that a court refused to comply simply on the ground that the party raising the rule had not shown harm. And we are aware of no examples either. So the nature of rules of this type is that sometimes the consequences for the party who failed to follow the rule are very serious. And sometimes harm might not be present for the other party, but the rule is still followed. And here, in fact, just because of the nature of the rule, the substance of the rule, the consequences for the government are not so serious. When the timely objection is raised at the beginning of the removal proceedings, the government can simply cure its error by issuing a new notice to appear that includes the time and place information. And so it's not prevented from ever seeking to remove the non-citizen, it just simply has to follow what the statute says. Well, I take it in Mr. Avila's case, that time doesn't have any effect on, for example, the durational requirement that was at issue in Pereira. That's correct, Your Honor. Mr. Avila definitely has more than 10 years of presence. So the stop clock rule is not at issue. So the stop clock rule is not at issue here. That's correct. All right. If you'd like to save a little bit, you can do that. Yes, if there are no further questions, I'd save my time for rebuttal. Thank you. All right. Ms. Yusuf. Good morning. Can you hear me? Yes. Yes, loud and clear. Oh, thank you. Thank you. Mona Yusuf, for the respondent, the Attorney General. If it may please the court, petitioner who had a full and fair hearing while represented by counsel, seeks to relitigate his removal proceedings, a remedy that is out of proportion with the only procedural error that he has identified. But Ms. Yusuf, let's back up. Because, first of all, Ortiz-Santiago very carefully distinguished between this failure to issue a notice to a peer that complies with the statutory requirements as a jurisdictional problem. We said no, it's not one of those. It is, though, an important claims processing rule, which from time to time could make a great difference to an alien. Sometimes it may, sometimes it wouldn't. But it's a claims processing rule that has to be followed. I am baffled that the government, when this was immediately pointed out by Mr. Avila's counsel, didn't just issue a new notice to a peer. Why they issued another notice of hearing, it would have been the most minuscule burden for the government to have fixed this problem and going forward to have ensured that its procedures assure compliant notices to a peer. Well, I wish I had a good answer for you on that. The record in this particular case is pretty terse, as I'm sure your honors know. The immigration judge just basically said denied and that was it and no other issue was raised. And I don't know if it's because he, I'm sorry, the immigration judge, she did not explain why she denied his motion to terminate. And perhaps DHS deemed it to be untimely because that was his third appearance and counsel had already filed two pleadings before the court before the appearance. But that's not here or there because the board did find it timely. The board found it timely and the board, at least, gives a reason, which is a bad reason, for refusing to give effect to this mandatory rule. Even then, the government could have just said, look, Ortiz-Santiago is the law in the Seventh Circuit. We'll issue a notice to a peer that's compliant. I know in your brief you outline, you know, the need to coordinate with DHS and EOIR and all of this, but all you have to do is get that date nailed down right before you issue the notice to a peer instead of sometime after. There's a real risk that an incomplete notice to a peer might not be followed promptly by a notice of hearing. It seems to have been here, but suppose it was a month. Suppose it was two months. People move. Different things happen. There could be slippage in the post office forwarding things. It's not a trivial matter. And I just don't understand why the government doesn't just use notices to a peer that satisfy the statute. Well, I believe, I mean, I don't have the exact answer about what happened in this particular case, but I don't believe it's because the government didn't want to include the date. Things have changed since this has happened. Now it's my understanding, at least in the Chicago area, that the Executive Office of Immigration Review provides a month of dates ahead of time to the Enforcement and Removal Office of DHS in order to be able to now provide those dates. But as, and I would remind the court that Respondent did try to remand this case. I acknowledge that. That was, I think the concern was to get this established since the remand was just to say for purposes of considering Ortiz-Santiago, which had already been decided by the time the board got there. So reconsider what you've already reconsidered. Well, I believe at the time, I mean, this alien is detained. So I believe, I can only speculate. So maybe I shouldn't speculate as to why DHS did or did not do. You don't need to, I'm not asking you to speculate. And the fact that he's detained, I think, is another thing that makes me think that the government's position is actually quite weak. You have the authority to continue to detain him as you process a new NTA. And that's probably what would. Yeah, sure. That's probably what would happen. I mean, if the board and I reached out to DHS, they would continue to detain him unless for some reason an immigration in the future does give him a bond, which might not be likely given his criminal history. But if that's the case, his litigation, should he remain detained, will take another maybe three to six months before the immigration court. And if there's an appeal, another six to nine months on top of that. And again, in this case, for all practical purposes, he is removable. Petitioner has not contested that. He admitted that. Could I just say, though, I mean, he is standing on his right to have this mandatory claims processing rule enforced. I don't know why. You probably don't know why either. But it is his right to do that. It is. That's assuming that it is mandatory and not a nonmandatory claims processing rule, which is outlined in our brief. In Ortiz-Santiago, it's my understanding that based on the facts and arguments presented in that case, clearly the facts presented that it was an untimely objection. And on top of that, the parties were arguing about the jurisdictional ramifications of whether or not the omission of a hearing date was a jurisdictional issue. So there was no benefit of briefing at that time to address what happens if it's a claims processing rule and a timely objection is made. So the court wasn't given the opportunity at the time to decide whether 1229A1 is a nonmandatory processing rule or a mandatory processing rule. But note that the rationale of Ortiz-Santiago was that the statute itself defines a notice to appear. And we are living in an era in which statutory language really matters. We don't just throw out parts of it in regulations. We don't try to second guess what Congress was thinking about when they wrote it. They told us what needs to be there. You might think they made a silly decision, in which case I suppose they could change and go back to the version of the statute that existed before IORIRA. But right now, that's the statute we have. I understand, Your Honor. And our point is that for a claims processing rule to be mandatory, it has to invoke a clear intent that the courts are without authority to make exceptions, that the rules are in emphatic form as to preclude exceptions, and the text of the rule leaves no room for flexibility. And based on the reading of this particular text, it doesn't—it's not inflexible. And the fact that— What else do you think DHS can delete from the list in 1229A? Oh, I didn't say they could delete it. I just said that there's an inflexible compliance. It doesn't necessarily have to be in one single document. Well, there's the new Chavez point, I guess. That is—and I agree with counsel, opposing counsel, that that case is tied pretty specifically to the stop time rule in that case. So there is a chance that they might say yes or no, whether or not an NTA—whether there's an umbrella rule that an NTA has to have all the elements in one document rather than two documents. But there's also a chance that the court might narrow it, just as they did in Peoria, which said this is based on a very narrow issue because it involves the stop time rule. So that case could have an effect on this case, and it could not. It's hard to tell. Okay. But I understand that the—as I said, there is really no clear intent in this statute that it has to be all in one document. It's not as if in those cases— You're not persuaded by the A notice to appear, meaning one of them. Well, when you start arguing about whether or not there's a quotation mark around an A or not an A, I would say that's not really a clear intent. A clear intent would be like the situation we have, say, in Eberhardt. In that case, the court found that criminal procedural Rule 33b-2 wasn't mandatory solely because it required that a new trial must be filed within seven days. It went on to also explain that Rule 45b said—provided specifically that that deadline could not be extended. And there's nothing really here in this particular statute that says that. If Congress had wanted everything to be in one single document or be served on one single day, for example, the pro bono list is not on the notice to appear. I'm assuming it's attached to the notice to appear. They could have done that. And the fact that past courts have found the two-step process prior to Peoria and even after was sufficient also shows there's no clear intent to have it all in one document. Okay. Your time is up, so thank you very much. Thank you for your time. Of course. Ms. Schnur? Thank you, Your Honor. So on the non-mandatory-mandatory point on which respondents' argument depends, there they are relying on the Supreme Court's case in NutraCeutical last year, where the court was very clear. What it meant by a mandatory claim processing rule is a rule that can never, even in the most compelling case for an equitable exception, it is not susceptible to an exception. The court does not need to decide here whether this claim processing rule is mandatory or not because the government never argued that it had an equitable basis for relief from the rules enforcement. Second, the relief that we are requesting here is not so costly. The immigration judge will have the opportunity to run the proceedings efficiently, can decide whether new testimony needs to be taken or not. That's simply not a reason not to vacate the removal order, especially because, third, this is the only fair result here. Mr. Avila objected to the non-compliant notice to appear in a timely manner, and the removal proceedings should have ended then and there. And so the only way to put him in the position he would have been if the immigration courts had simply followed the law is to allow him a second chance. And respondent does not argue that that would be futile. They, in fact, acknowledge that there is a possibility of a different result should the government decide to, again, issue a new notice to appear. If there are no further questions, we ask that the petition be granted, the decision of the board reversed, and the removal order vacated. All right. Thank you very much. Thanks to both counsel. We'll take the case under advice.